UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHATIKA G.,

               Plaintiff,

      v.                                                   **DECISION AND ORDER**
                                                                      20-CV-860S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

      1.      Plaintiff Shatika G.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her applications with the Social Security Administration on June 21, 2013, for her Title II application and May 3, 2013, for her Title XVI application.  Plaintiff alleged disability beginning September 11, 2011, due to obesity, schizoaffective disorder, post-traumatic stress disorder ("PTSD"), depressive disorder with bipolar related disorders, anxiety and obsessive-compulsive disorders, and intellectual disorder.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On May 21, 2015, and continued November 5, 2015, ALJ Eric Glazer held a hearing at which Plaintiff—represented by counsel—and Vocational Expert David Festa appeared and testified. (R.[2] at 34-53, 54-74.) At the time of the first hearing, Plaintiff was 35 years old. She had a high school education and had past relevant work as a production assembler (light exertion work) and hand packager (medium work). (R. at 379.) The ALJ found that Plaintiff could not perform past relevant work or substantial gainful activity since September 11, 2011 (R. at 379, 368).

4. The ALJ considered the case *de novo* and, on January 4, 2016, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed her first current action, challenging the Commissioner's final decision. Then-Chief Judge Frank Geraci vacated and remanded ALJ Glazer's decision, [Shatika G.] v. Comm'r, No. 17CV426, No. 14, Jan. 30, 2019 (R. at 495), 2019 WL 486089 (W.D.N.Y. Feb. 7, 2019). The Appeals Council directed the ALJ on remand to further develop the record (including Plaintiff's educational records, reading abilities and clarification of Plaintiff's IQ score, offer Plaintiff an opportunity for a hearing, take whatever action to complete the administrative record, and issue a new decision) (R. at 510, 365).

5. On remand, on November 13, 2019, ALJ Paul Georger conducted another hearing at which Plaintiff (again represented by counsel) testified with Vocational Expert Mary Vasishth (R. at 392-428). ALJ Georger considered the case *de novo* and, on March 20, 2020, issued a written decision denying Plaintiff's applications (R. at 365).

---

[2]Citations to the underlying administrative record are designated as "R."

6. Upon this second decision, Plaintiff filed the present action seeking judicial review. (Docket No. 1.)

7. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 15.) Plaintiff filed a response on May 20, 2021 (Docket No. 16), declaring that no reply was necessary (id. at 1), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

8. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

9. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen,

859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

10. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

11. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to

4

>perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

12. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

13. Both ALJs analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the second ALJ found that Plaintiff has not engaged in substantial gainful activity since September 11, 2011.  (R. at 368.)  At step two, ALJ Georger found that Plaintiff has the following severe impairment:  obesity, schizoaffective disorder, PTSD, depressive disorder with bipolar related disorders, anxiety and obsessive-compulsive disorders, and intellectual disorder.  Id.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 369-73.

14. Next, ALJ Georger found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except occasional climbing ramps, stairs, ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants; occasional exposure to extreme cold and extreme heat. The ALJ found Plaintiff can perform simple, routine, and repetitive tasks but not at a production rate pace (i.e., assembly line work); can make simple, work-related decisions; can have occasional interaction with coworkers, supervisors, and the general public. (R. at 373.)

15. At step four, ALJ Georger found Plaintiff is unable to perform any past relevant work. (R. at 379.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Since additional limitations impede Plaintiff's ability to perform light exertion work, the ALJ posed hypotheticals to the vocational expert of a claimant like Plaintiff in age, education, and employment experience. The expert opined that this hypothetical claimant could perform such work as dining room attendant, price marker, and office helper (all light work). (R. at 380.) Accordingly, ALJ Georger found that Plaintiff was not disabled. (R. at 380-81.)

16. Plaintiff now argues that the RFC determination is not supported by substantial evidence because the ALJ failed to evaluate Plaintiff's credibility, such as failing to provide a sufficient explanation for the credibility determination (Docket No. 13, Pl. Memo. at 17-23). Furthermore, she argues that the RFC was a product of the ALJ's lay judgment and not supported by substantial evidence (id. at 23-30). For the reasons that follow, this Court adopts Plaintiff's second argument and remand due to the ALJ rendering a lay opinion.

17.     First, on Plaintiff's credibility as to her pain, the ALJ found Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms but Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (R. at 374).  The ALJ first noted that the evidence did not support Plaintiff's contentions as to the degree of pain she suffered (R. at 374-75).

18.     The ALJ pointed to Plaintiff's testimony about her daily activities, such as maintaining her personal hygiene, cooking meals, engaging in household chores, and caring for six children, as not being consistent with her claimed degree of pain (R. at 374). The ALJ also observed inconsistencies in the record and evidence of non-compliance in the record (R. at 375); for example, Plaintiff missed an appointment and as a result was without prescribed Latuda for two months (R. at 375, 727, 949 (same as R. at 727), 1144 (same as R. 727 and 949)).

19.     Social Security regulations mandate a two-step process to assess a claimant's credibility, 20 C.F.R. §§ 404.1529, 416.929, Matejka v. Barnhart, 386 F. Supp.2d 198, 205-06 (W.D.N.Y. 2005) (Siragusa, J.) (quoting Murphy v. Barnhart, No. 00 Civ. 9621 (JSR) (FM), 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003), and citing 20 C.F.R. § 404.1592(c)) (Docket No. 13, Pl. Memo. at 18).  The ALJ must make findings as to credibility by discussing certain factors and giving specific reasons for the weight accorded to the claimant's testimony.  The assessment of credibility includes the claimant's activities; the location, duration, frequency, and intensity of the claimant's pain; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to relieve pain; treatments other than medication;

and other factors concerning functional limitations and restrictions due to pain, Matejka, supra, 386 F. Supp. 2d at 205-06.

20.     Plaintiff contends that the ALJ failed to set forth sufficient explanation for this credibility finding and this error requires remand (Docket No. 13, Pl. Memo. at 17). She argues that the ALJ mischaracterized her testimony, creating legal error (id. at 20-23), see Maxwell v. Berryhill, No. 15CV585, 2017 WL 4985506, at *2 (W.D.N.Y. Nov. 2, 2017) (Telesca, J.); Morales v. Berryhill, No. 14CV2803, 2018 WL 679566, at *18 (S.D.N.Y. Jan. 8, 2018) (Smith, Mag. J.) (Report & Recommendation), adopted, 2018 WL 679492 (S.D.N.Y. Jan. 31, 2018).  Although the ALJ found that Plaintiff independently engaged in personal hygiene (R. at 374), Plaintiff testified that she had difficulties with her hygiene, requiring assistance from her mother in applying toothpaste due to a side effect of her medication causing her shakes; but Plaintiff stated this did not occur often (R. at 415; Docket No. 13, Pl. Memo. at 20).  She testified that her mother would attend school conferences and events for her (R. at 413-14).  When Plaintiff had panic attacks (which she believed occurred three times a week for about an hour at a time), her mother would come to help her with the children (R. at 414-15).  Her mother also came to cook for her (R. at 415).  Plaintiff testified that she could perform some household chores but needed assistance with vacuuming, clothes, and shopping (R. at 415-16).

21.     Plaintiff then explained her noncompliance with taking medications and making appointments was due to her intelligence and anxieties about leaving her home (Docket No. 13, Pl. Memo. at 21-23).

22.     Defendant, however, states the ALJ noted Plaintiff's testimony about her difficulties in daily living (Docket No. 15, Def. Memo. at unnumbered page 7 of 15, citing

R. at 374). There, the ALJ summarized Plaintiff's hearing testimony (R. at 413-16) that she had difficulty performing activities of daily living and required her mother's assistance with performing household chores and care for her children (R. at 374).

23. The ALJ concluded Plaintiff's statements regarding her daily activities were not consistent with her allegations of disabling pain because Plaintiff "reported and testified to the independent ability to engage in personal hygiene, prepare simple meals, engage in household chores, visit with friends and family, shop, use a computer or smart phone, handle finances, watch television, care for her six children, and maintain the ability to attend appointments" (R. at 374-75).

24. Plaintiff's testimony during the second hearing supports this finding. While she testified to requiring her mother's assistance in cooking, tending to her children, and shopping, Plaintiff also noted that this need was episodic. Plaintiff said she needed her mother's assistance when Plaintiff was in a panic attack or could not manage brushing her teeth due to medicine side effects (R. at 413-16). The ALJ noted this in the decision (R. at 374) before concluding that Plaintiff testified to greater abilities in performing daily activities than her pain allegations would allow (R. at 374).

25. In making this finding, the ALJ also relied upon Plaintiff's reports to evaluators Dr. Susan Santarpia (R. at 322) and Dr. Christine Ransom (R. at 1008), although the ALJ gave these doctors' opinions only partial weight (R. at 377). Drs. Santarpia and Ransom each observed that Plaintiff was able (among other daily activities) to dress, bathe, and groom herself (R. at 322, 1008) and care for her children (R. at 322, 1008), without noting reliance upon anyone for assistance. Dr. Santarpia also suspected Plaintiff of lack of effort or malingered due to the manner she answered test

questions (R. at 321, 322).  Thus, it appears the ALJ relied upon the opinions of these evaluators (perhaps relying upon Dr. Santarpia's malingering opinion, see R. at 376, 377) and Plaintiff's apparent statements to these doctors and not Plaintiff's contrary testimony.

26. Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) on this ground is denied.

27. Next, Plaintiff asserts that the ALJ based the RFC on the ALJ's lay opinion and not on a medical opinion (Docket No. 13, Pl. Memo. at 23-30).  The ALJ gave partial weight to the opinions of Drs. Santarpia and Ransom and little weight to treating source Dr. John Napoli and nurse practitioner Diana Page (R. at 377; Docket No. 13, Pl. Memo. at 24; cf. Docket No. 15, Def. Memo. at unnumbered page 12 of 15).  In part, the ALJ concluded Dr. Napoli's and Ms. Page's findings go to the ultimate determining issue of disability reserved to the Commissioner and gave little weight to the treating sources' findings and opinions because it was not consistent with the entire record because Plaintiff's condition improved with medication and her activities of daily living including care for her children (R. at 377, 733).

28. On September 5, 2013, Dr. Napoli examined Plaintiff and provided his assessment for a disability screening (R. at 360), finding that Plaintiff had very limited mental functioning in understanding and remembering instructions, carrying out instructions, maintaining attention and concentration, making simple decisions, and being able to function in a work setting at a consistent pace, and moderate limitations in interaction appropriately with others and maintaining socially appropriate behavior without exhibiting behavior extremes (R. at 361, 377).

29. On March 16, 2015, nurse practitioner Page examined Plaintiff and reached similar findings as Dr. Napoli (R. at 262-63, 377).

30. Among other opinions, Dr. Santarpia found in 2015 Plaintiff had mild mental impairment "demonstrated in [Plaintiff's] performing complex tasks independently" (R. at 323). Dr. Santarpia then concluded that the "results of the present evaluation appear to be consistent with psychiatric problems and cognitive inefficiencies, but in and of itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis" (R. at 323).

31. In 2019, Dr. Ransom found Plaintiff showed no evidence of limitation in understanding, remembering, and applying simple and complex directions and instructions, among other functional capacities (R. at 1008-09, 1010). Dr. Ransom concluded that Plaintiff had no limitation in interacting with others (R. at 1011).

32. In giving partial weight to Dr. Santarpia's opinion, the ALJ found the intellectual testing results were internally inconsistent possibly due to Plaintiff's lack of effort or malingering during the testing (R. at 377, 322). But the ALJ accepted from these opinions the conclusion that Plaintiff could perform simple, routine, and repetitive tasks as being consistent with the overall record (R. at 377). The ALJ gave greater weight to the opinion of Plaintiff's ability to understand, remember, and carry out simple instructions (R. at 377) while giving less weight to the rest of the opinions (R. at 377). The ALJ rejected the conclusions (R. at 323, 1008) of mild mental impairments not limiting functional capacities was not consistent with the examination findings and Plaintiff's continued treatment and medication (R. at 377).

33.     Prior to evaluating the consultative opinions, the ALJ reviewed Plaintiff's mental health treatment history, noting that she received "routine, limited and conservative treatment modalities and show relatively benign mental status findings upon examination" (R. at 375-76).

34.     Plaintiff argues that the ALJ lacks medical expertise to determine the extent of limitation the ALJ found, thus the ALJ had to rely upon his own interpretation of the bare medical record to reach his conclusion (Docket No. 13, Pl. Memo. at 25).  Given Plaintiff's treatment record, she argues the ALJ lacked a medical opinion to determine that she could occasionally interact with coworkers, supervisors, and the public (id. at 27, with extensive citation of the record, e.g., R. at 299, 791, 794-95).

35.     Defendant argues that the ALJ is tasked to consider the relevant medical and other evidence, resolving genuine conflicts in the evidence and that the ALJ here appropriately applied the criteria of 20 C.F.R. §§ 404.1527 and 416.927 in assessing the medical opinions (Docket No. 15, Def. Memo. at unnumbered pages 12, 14 of 15). Defendant concludes that substantial evidence supported the ALJ's findings that this Court should not reject, that the ALJ properly gave greater weight to the opinions of Drs. Santarpia and Ransom when compared with the weight given to Dr. Napoli's and Ms. Page's findings (id. at unnumbered pages 13-14).

36.     As noted above, the ALJ had substantial evidence for Plaintiff's performance of activities of daily living, including childcare, that support the weight given to Dr. Napoli and nurse practitioner Page's findings.

37.     At issue is the weight applied to the consultative examiners' opinions.  The ALJ reviewed the mental health treatment record and based upon Plaintiff's conservative

treatment concluded that that it contained relatively benign mental status findings(R. at 375-76). Then the ALJ rejected (R. at 377) the mild or no limitation opinions of Drs. Santarpia and Ransom for some limitation with social interactions at work (R. at 323, 1008). Thus, the ALJ found a more severe level of impairment than the consultative examiners without medical opinion to support the finding.

38. The ALJ rejected these opinions based on the clinical findings from examinations without medical professional construing the raw material, instead basing his assessment upon Plaintiff's continuous treatment and medication (R. at 377).

39. The ALJ's own review of the treatment record would appear to support mild limitation opined by Dr. Santarpia (R. at 323) which the ALJ rejects as inconsistent with Plaintiff's history of continuous treatment and medication management (R. at 377). This internal inconsistency between the ALJ's findings and opinion assessments is the product of lay review of the psychiatric record.

40. Thus, there was no tether between the RFC and medical opinions, Jordan v. Berryhill, No. 17CV509, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018) (McCarthy, Mag. J.) (on consent). Upon the ALJ's lay assessment, he apparently concludes that Plaintiff's mental impairments were more severe than the consultative opinions.

41. Plaintiff's Motion for Judgment on the Pleading (Docket No. 13) is granted because the ALJ failed to tether his findings to a medical record and rendered an RFC on Plaintiff's ability to interact with others.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     September 23, 2021
           Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge